May it please the Court, Tony McHugh for the appellant Robert Wendel, M.D. Your Honor, Your Honors, often the federal court is called upon to make an eerie guess as to appropriate law, the substance of law of the state where the court is sitting. This is a case where a guess was not required. There's case law, certainly in the Ninth Circuit, describing what the eerie guess is about and how the federal court, looking at substance of law, should act. The federal court is bound by the law of the highest decisions of the state court. So if there is a Washington Supreme Court case, that should be determinative, should dictate the outcome. The federal court engages in the guess, the prediction, when there is not that Supreme Court opinion and the court then must determine from other sources, appellate, district court cases, law review articles, cases from other jurisdictions. Here, Your Honor, the criticism that Dr. Wendel makes of the ruling below is that the district court didn't examine or evaluate Washington case law with regard to the defense duty. And it did not cite any Washington case law at all in its order with regard to the duty to defend question. This case focuses on that issue alone. It's the duty to defend and what is the appropriate rules in Washington about that duty and how is it regarded. It has a preferred status. We understand all of that. The duty to defend is broader than the duty to indemnify and whatnot. Let me ask you this. What they try to make a distinction here in looking at material and information outside the four corners of the complaint. Correct? That's correct, Your Honor. It's called the eight corners rule. So the only thing that. The policy and the. But let me ask you this. Didn't the complaint refer to the prior case? No. That's a significant point and that's been admitted by travelers. The complaint in the Young case, the second case, litigation number two, made no reference at all to anything, any prior litigation. So the only way that travelers would get out of its defense duty would be by going outside the four corners of the complaint, outside the policy of the eight corners. Now suppose that the second complaint had, you know, referenced the prior litigation. Good point, Your Honor. There is one of the cases that travelers cite. It's either the Texas case or a Florida case. It had to do with a divorce proceeding. And the divorce proceeding, an unhappy spouse in a closed corporation, sues the corporation in case number two. And she makes reference in her complaint to the divorce proceedings in case number one that involved one of the officers, owners of the closed corporation. So what the court says is we're not going outside the complaint. All right. So that's not, so here they only learn, they only gain all this information about the prior litigation by literally, they know about it and they. That's correct, Your Honor. They rely upon it to say we're not going to cover. The issue is not where they have that information from, the source of the information or whatever, but it's the use. What happens in the court below is that the court below, when it gives its opinion, it focuses on the prior litigation exclusion first, discusses that and then talks about the eight corners rule, the extrinsic evidence rule. I think that's incorrect. The proper logic is to say what's the rule? And that's the Wu case that says there are only two exceptions, and those exceptions deal with either an uncertain complaint or where there's a conflict between known information between the two pleadings. And they always benefit the insured. And they always benefit the insured, yes, Your Honor. But let me ask you, it seems like the rule proposed by Travelers Insurance here seems sensible and that it was somewhat inevitable, I mean, because they could have filed, I guess, a declaratory action. I'll ask them in a minute why they didn't. But if they had, then couldn't the judge have made this decision? Absolutely, Your Honor. So what's the harm here? The harm is that the duty to defend was not honored. And under Washington law, you must honor the duty to defend unless you fall into some very narrow exceptions. Your Honor suggested that it may be inevitable that the Washington court may modify that rule, either the Wu rule or truck insurance exchange, which is a 2002 case. There's a triad of cases, three major cases, American Best, Wu, and truck insurance exchange or Vanport. And they all talk of the limited exceptions. They talk of two exceptions. Here Travelers wanted to do something else. But the Texas Supreme Court cited the guideline case of versus Fielder, cited by Judge Succo in his brief, was a case where the Texas Supreme Court said, no, we're not going to go that far. It was tempted. Certainly you read the court's opinion. It was a sexual abuse case where the person charged with the abuse was no longer an employee. And that was critical. He had left the church before the policy incepted. There would have been no coverage. But the Texas Supreme Court wouldn't go that far. I think really the lesson here is that it's up to the state Supreme Court to decide when it wants to go and how it wants to go. Let me just follow up on Judge Morgia's question. Maybe I misunderstood her question. But I thought she might be saying that it's inevitable here that eventually it would come out. I'm sorry. Yes, Your Honor. It would come out that there was this prior litigation. And then the issue would have been did the litigation exclusion apply. So they'd still have to cross that barrier. And we objected to the litigation exclusion as being enforceable on grounds of ambiguity. But certainly they could have had their day in court. They could have had a court say to them, no duty to defend. We think that would have happened very quickly. A counsel suggests that, oh, this process of declaratory relief and all takes too much time. It's too inefficient. That's why Travelers doesn't do it. I think, Your Honor, the motion on that issue could have been submitted immediately. It could have been determined within months or weeks. So what happens once they make a determination that there's not a covered loss, that cuts off the duty to defend and they're free? That was their interpretation was that they had. No, I'm just speaking generally under Washington law. If the insurance company says, hey, we don't owe anybody. This is not a covered loss. We're going to go to court and we're going to file a declaratory relief. And if they prevail, the Superior Court judge says, yeah, you're right. That's correct. And at that point then the insurance company, as part of that order, could withdraw the defense, assuming the court allowed it to do that. And then the insured would have to defend themselves. But that's the point, Your Honor. The point is that this is a valuable right to have a defense. And insurance companies have to do it the right way. Now could they have granted or issued what's called a reservation of rights? Ah, yes. Yes, a reservation. That would have been really the way to get to court. They would have defended saying, we're not admitting coverage, but we will defend you because of Washington rules, ground rules on coverage. But we're going to go to court to see if a court will say that there is no coverage and that, therefore, the need to defend doesn't attach. And if they prevail, do they get to get the money back? It would depend on their policy. Right now the law in Washington is no unless there's a clause in their policy. And that was decided last year. Your Honor, if you don't mind, we have the second issue, too, of the bad faith. And this is the ambassador's case. I'd like to reserve comment on that. Before you reserve, can I ask you, let's say, assume we agree with you that properly relied on the prior litigation exclusion. What should happen here then? Does this get sent back to the district? No, I think, Your Honor, since you now are determining the partial summary judgment motions de novo, based on the record, you can determine that the duty to defend did attach. And based on the record that's before the court, especially the AM Best case, which I think would be right on all four corners with this case, that there was a breach of the duty of good faith as a matter of law. Well, the district court didn't really address that issue once he entered his judgment. That's correct. There was no need for him to do that. So this prior knowledge and the other things, they were not. They were. The prior knowledge exclusion was brought and argued by Dr. Wendell because Dr. Wendell had to show there was no basis at all for them refusing to defend. So it had to knock out the two exclusions, and Dr. Wendell's motion was denied. Traveler's motion was granted on the one exclusion. So the court didn't go further than that. Okay. Do you want to save the balance of your time? Yes, I would. You can respond. Thank you, Your Honor. Joseph Hampton for Travelers. There's a big problem here with the way this argument is coming down. Dr. Wendell is arguing that we take a sound bite and gold plate it, titanium plate it so that it is virtually indestructible and applies in every single situation. The law doesn't work that way. There are rational exceptions and there are rational limitations to any rule, and that's exactly what we have here. Because they admit that this is an unambiguous exclusion. All the facts are undisputed as relevant to this coverage issue. We're talking about duty to defend. Yes, we are. Not coverage. Well, if I may be so bold as to disagree, coverage has different aspects. There is the indemnity coverage. There is the defense coverage. You lump them together, but we are talking about the duty to defend. And duty to defend in Washington has a broader scope than the coverage. Exactly, and we're not disputing that. But what we're saying is there are certain types of facts outside of the complaint against the insured that can be considered. Why don't you just tell me what Washington Supreme Court case supports your position? Overton. Overton. Overton. Why? In Overton, there was an EPA notice to the insured that said, your ground is contaminated. And later on, the subsequent purchaser sued Mr. Overton because the ground was contaminated. He tendered it to the carrier, and the carrier said, we're not going to defend you because you knew already that it was contaminated when you bought it. That is a fact that was outside the complaint against Mr. Overton, and it was undisputed. You can look at the decision, and it says it right there. In addition, Helen – What year was Overton? I'm sorry. I can look it up, 2000-ish or something like that. Is it prior to Wu and American Best? Yes, it is. But their argument is that this rule has been in effect for decades. And if the rule has been in effect for decades, it was in effect when Overton was decided. But doesn't Wu clearly state – isn't the statement by the Supreme Court that says, the insurer may not rely on facts extrinsic to the complaint to deny the duty to defend? Is that not a clear statement? That is a clear statement, but it has its limitations, Your Honor. Okay, so what are they? They are this. And actually, the wine carton case from Texas stated it very appropriately. The rationale – Why would we look at Texas law when we have Washington law, which is what we're supposed to look at? Okay, this is a quotation that so well encapsulates the issue that it is applied in virtually every eight-corner state. It says, The rationale behind the eight-corners rule is to require insurers to defend the insured against all claims, even those without merit. So the genesis of the rule is this. The carrier can't go out and find evidence outside the complaint to prove that the insured is not liable to the plaintiff and thereby deny a defense. Those are what we call merits facts. The carrier cannot consider merits facts to deny the duty to defend. And that's what the Wu case is talking about. But I will also mention to you that – he's going to be on me about this – that it is dicta. Because the Wu case didn't even consider what extrinsic evidence was improperly considered. It just didn't. The closest that we come is Vanport Holmes. And Vanport Holmes is a case that illustrates what we've been talking about. The extrinsic evidence that the Vanport Holmes case court found improperly considered was evidence that went directly to the allegations of liability against the insured. And the carrier had said, oh, no, you are actually acting as a contractor, not as a consultant, as pled, and therefore we have no coverage. That's why truck insurance got in trouble there. What we're talking about here is something that falls in a different category altogether. Go ahead. Well, aren't these arguments that you should have been making in a declaratory relief action? No, there's some things that are so obvious, Your Honor, that they shouldn't have to be taken in a DJ. And the suggestion was made, couldn't we have filed a DJ? And I think the chief said, you know, how long would it have lasted? Oh, maybe a week. The law should not require the doing of frivolous things. Instead, have the insurer decide whether or not they're going to defend. But that's what insurers do all the time, Your Honor. Well, not when there's a reasonable question of interpretation on whether or not you should. Actually, Your Honor, there wasn't a reasonable interpretation. It was simply this. Okay. Washington state law seems to think that, especially in light of American Best, how do you distinguish, I mean, or not look at American Best Foods, which quotes Wu and says when there's any type of reasonable question, and since the Weisman lawsuit wasn't included in the complaint, you had to look to the extrinsic evidence to do that, which is prohibited. Well, it's, okay, certain types of evidence is not prohibited. And the courts and the commentators have said, if it relates to a coverage issue, not the merits issue, you can look at it. But that's all outside of Washington, right? All the authority that you're citing. Well, okay. Yes, the ones that come out and say it are outside of Washington. But look at the Washington cases. Look at the Gannon case. In the Gannon case, we have – Does the Washington Supreme Court ever say, you know,  Actually, in some of these, in Wu, they found a case from outside and they said they agree with that. So they do look outside the states, outside of the states, to find authority upon which to base their decisions. But if I could finish my response to Judge Tucker's question. Look at Gannon. In Gannon, a defense was denied. And like here, that was a claims-made policy. And the carrier looked at the fact that this insurer did not tender the complaint to the carrier in the policy period as the policy requires. And the court said, no, it was fine for the carrier to deny a defense in that instance. Also, the Toole, Thorpe, and Findley case is the same thing. Where are those cases from? Washington Court of Appeals. And, again, if you look at Overton, there's extrinsic evidence considered as well. But I have to remind the court gently that this is a claims-made policy also. Why is that significant? It's significant because if you don't let the evidence of the prior complaint in to consider the duty to defend, then you insure the building that's already on fire. Claims-made coverage is triggered by the giving of the claim, making of the claim, and the tendering it to the carrier during the policy period. This is what happens if you don't have that. Plaintiff sues defendant. Defendant says, oh, my gosh, I don't have claims-made coverage. Will you please take an on-suit? Plaintiff takes an on-suit. Defendant goes out and buys claims-made coverage. Plaintiff sues again. Defendant tenders it to the insurance carrier. He says, I just got sued for the first time on this. He's lying. But to find out the truth, the carrier has to do what? Go outside the complaint to find out, yes, he was not first sued during the policy period, and there was prior litigation. That's why claims-made coverages need to have this exclusion. Really what this boils down to is how do we apply a prior litigation exclusion without looking at prior litigation? Well, you can do that under declaratory action, though. Yeah. Well, you know what? The policy doesn't say we have to. You have to remember, a policy is a contract, Your Honor. It looks like Washington law says you have to. But Washington law follows the contract. And the contracts that are giving rise to that rule that you've been talking about are CGL coverages. And they say, you know, we're going to defend any of these claims, even if they're groundless, false, and fraudulent. And that's true, and our coverage has that, too. But what it also says is we will have no duty to defend in the instance where this exclusion is triggered. And that's exactly what we have. Well, it seems to me that if you read Wu and the other case that Judge Merguez referenced. American invest? Yeah. It's short. And, you know, it doesn't say what you say it wanted to say. And if you think it should support your position that you can consider extrinsic evidence on these unique facts and the claims-made policy and whatnot, it's not clear that it does. I mean, the insured is entitled to, you know, the benefit of the doubt. And then you can go to superior court, federal court, whatever you want, wherever you properly can file your case, and you can litigate that issue. What was the doubt? We know exactly what the prior litigation said. It said Krista Yount had an affair with Dr. Wendell. He fired her, and she killed herself. What was the next suit about? He had an affair, he fired her, and she killed herself. The question is, the doubt is the rule in Washington about extraneous evidence. And you're interpreting it to mean you can do just what you did. Because it's not a merits-related fact. And there is no case in Washington that says what you just said. True. But the cases have done that. As far as I'm concerned, end of story. Well, that's unfortunate because you've just encouraged people to go out and buy coverage when they're about to get sued. I'm not encouraging anybody to do anything. I'm dealing with a particular case that based on a set of rules that the Washington Supreme Court has adopted. But it's dicta in Wu, Your Honor, and the reason is they haven't identified a single extrinsic fact that was mentioned in Wu that had anything to do with that coverage decision. And we have challenged and challenged and challenged them to come up with one fact, and they've always failed. Every single time that they have cited these cases, it's been soundbite after soundbite after soundbite. It looks like the whole purpose in Wu was dealing with extrinsic evidence. How could it be? No, it wasn't. What's the extrinsic evidence? In Wu? Yeah. We're waiting. We've been waiting for years, Your Honor. There is none. I don't know what it was. Maybe opposing counsel can speak to that. I don't know. But the Supreme Court seemed to say that you couldn't rely on whatever it was. All right. Okay. It seems like that's what they're saying. As we explain in our brief, when that citation is made, when the court makes those comments, it's always in a string of boilerplate at the beginning of the discussion. Every single time. It's like the litany that courts go through when they start to say, here are the summary judgment rules. But nowhere in Wu does the court actually say, the extrinsic evidence that Fireman's Fund considered that was inappropriate is X. Nowhere.  And as I mentioned earlier, it goes directly to the merits of the case against the insured, not to an insular coverage issue. And we have to look beyond this case for a moment and consider what they're asking for. What they're asking for is something like this. The carrier has to defend in this situation until it's figured out later. A guy gets sued for driving his uninsured car into somebody else. He has an insured car that he left at home. It's undisputed he's driving the uninsured car, but he just gets sued for running a red light. Under their iteration of it, you have to defend until you start a DJ and perhaps it gets stayed, it takes a while to get on the docket, and years later maybe you get a ruling that, oh, yep, he sure wasn't driving the insured car at the time of the accident. There has to be an assessment of whether or not the insured was not unreasonable in stating that they had a reasonable position, that this whatever, the prior litigation exclusion doesn't apply or whatever. There has to be some... Right, and their only reason is this. We know everything you say is true, Travers. We just don't think you should look outside the complaint. He's essentially conceded that had we started a DJ we would have won. So his bad faith... I didn't understand him to concede that they would have won had they filed a debt. Had you filed a debt, really, he didn't concede that. He hasn't. Okay, he said they could have and gotten out of it. Well, I'm sure he would argue for that. Okay, my time is up. But let me, I need to ask you one question before you step down. So assuming we agree or find that the district court on this particular prior litigation exclusion didn't rule correctly, what would happen here in terms of what would the posture of this case? Do we send it back to the district court? If it didn't determine it correctly? Right. And on what ground? Because there are other grounds that we briefed that I don't have time to mention, but there's another exclusion that applies as well. We've been... Well, the prior knowledge exclusion? Okay, yes. Well, you didn't even file a motion for summary judgment on that down below. Oh, that's why I'm curious what happened here because you didn't pursue that on your motion for summary judgment at the district court. So I want to get from both sides what you think what happened here. If this panel wants to reverse and send it back down, well, this panel can reverse and find that there was a duty to defend, send it back to the district court for a determination of whether, I guess, the denial was in bad faith. Or we go back down for a trial and they would have to put on evidence of their damages. Okay, thank you. Thank you. We'd ask that the court be affirmed. Okay. There's a few minutes left for rebuttal. Your Honor, just a point or two. Counsel suggested that Dr. Wendell has conceded that the prior knowledge exclusion is unambiguous. That's not the case. If the court looks at our brief, our second point with regard to the prior litigation exclusion is that it's overbroad and shouldn't be enforced. Well, but isn't the posture at this point that prior knowledge was not pursued by travelers? I'm sorry, I misspoke. I misspoke myself, Your Honor. I meant to say the prior litigation exclusion. He suggested that we had conceded that that was unambiguous, and that's not the case. Let me ask you about prior knowledge. Yes. That wasn't pursued in the traveler's motion for summary judgment. Not in traveler's. We made a cross motion. But your cross motion was summarily denied by the district court. That's right. The cross motion, Your Honor, raised the issue of the two exclusions, and we challenged the prior litigation exclusion and the prior knowledge exclusion, and the court denied our challenge. But we wouldn't review that for the first time here, would we? The court would review de novo. There was no cross? Well, I'm sorry. There was a cross partial motion. But the district court never examined it or analyzed it. It denied us relief. So we're seeking this court to reverse that denial of relief. No, but it denied it without analysis, without hearing any. Because you just, I mean, he got your brief, but then he summarily denied it after he found for the prior litigation exclusion. I was confused, Your Honor, by his ruling. There's some part of his ruling where he's talking about why the court is denying it, and he suggests there that the court finds that the plaintiff knew the facts surrounding the out-to-fair and death. He talks about the plaintiff's knowledge. That would be Dr. Wendell. Our understanding is, Your Honor, that the prior litigation exclusion has no element of knowledge in it. It's just the acts. So it looked as if the court may have been putting the two exclusions together. I understood the posture's case to be simply, given the court, as I read the ruling, is that he relied on the prior litigation exclusion, and that's it. Correct. He didn't address anything else. Basically, we should send it back if we agree with you. I would say, Your Honor, that having made the cross motion, having been denied the relief, that the issues in the cross motion are before this court, as well as the motion for summary judgment on the bad faith issue, which we have brought to this court. And, again, we would say that the American best case, that this court has the record to grant the summary judgment on bad faith. Travelers didn't bother to inform itself on Washington law about the defense duty. There is no Washington law that would support the denial under the circumstances here, not fitting within the Wu exception. The Wu case was presented to travelers. Travelers disregarded the Wu case. The claim staff rushed to judgment, not doing their ordinary examination. I think, Your Honor, it's even a stronger case than American best, because in American best, the insurance company hired a coverage lawyer to give them an opinion. Here, they didn't care to be informed that way. So we would say to this court, that given its right to review and de novo, that the court can decide the issue of bad faith. Okay. Thank you, Your Honor. Thank you, counsel. We appreciate your arguments, matter submitted.
judges: Tucker, Paez, Murguia